All right, welcome to day two of the West Court panel. Although we're reconfigured this morning, I am supremely honored to have Judge Carolyn King on my right side and Judge Katharina Haynes on the left. We have four cases to be argued today. Strong likelihood that between the second and the third case we may take a little short break. But beyond that, I know by looking, everybody's familiar with the rules and so we'll proceed. First case up, number 20-50497, United States v. Martinez. Ms. Davidson. Good morning and may it please the court. Mr. Martinez challenges the convictions of counts one and two based on an insufficient factual basis to support his Yes, sir. Mr. Martinez challenges the convictions of counts one and two that there is an insufficient factual basis to support those convictions. Chronology is critical in this case. It's undisputed that the offending images were produced by the co-defendant on June 5th and September 13th. A subsequent request on September 26th for photos is all that exists in this factual basis to support aiding and abetting of production. That is insufficient as a matter of law. There's only so many ways to say there are no facts on this record. To what extent does the factual basis that he agreed to during the plea call fit into our consideration of whether there are sufficient facts or not? Because this is plain error, you can look at the record to see, you can scan the record to see if there are other facts that would support it, but there are not facts on this record that place him in a moment of time when the images were produced that reflect a shared criminal intent to produce. Well, they were living together at some point, weren't you? You said chronology is important, right? Yes, sir. So, in this chronology, isn't there a span in which the two of them were at least occupying shared space, shall I put it that way? So, to what degree, when they were occupying shared space, did some of these events occur? You understand my question? I do. It's not like she was in San Diego and he was somewhere else. Based on my understanding, there's a point where they were living together. So, if the images are being produced during a period of time with their shared space, I mean, does that fit into the calculus at all? Or maybe I have the sequence wrong. Correct me if I'm wrong. No. I have several parts to that answer. One, for aiding and abetting mere presence is not enough. That's clearly established by the case law. Second of all, we don't know where she took the photos. Third, you are correct that they did say they were living together. But I would point the court to page 195 in the record. It's paragraph 110 in the PSR. It describes what their living arrangement was. The structure comes across as barely inhabitable and it's shared by another person and there are multiple structures on the property. So, it's unclear. This is not just a white picket fence somewhere in a neighborhood where they're comfortably living and functioning together. It's unclear exactly what their living arrangement was, but the fact remains we don't know where she took the photos and there are no facts in this record. Whether it's the plea colloquy, whether it's the plea agreement, or whether it's a scan of the record that places him with shared criminal intent for production and actively participating on those dates. As for plainness, it is well established what the elements for aiding and abetting are. We cite several cases that provide good context for what active participation is and what active participation is not. Those are the Scott and the Jackson cases. In Scott, there was aiding and abetting and it was clear throughout the duration of the crime that Scott was creating the plan, recruiting the driver, helping her coordinate the transport of drugs. That's compared to Jackson where there was no aiding and abetting of possession of drugs because his co-conspirators were able to get them on their own and there was no involvement by Jackson. Aiding and abetting is clearly established law and a plain application of the facts or absence of facts in this record make this error obvious. Because counts one and two carry the longest penalty range, it is reasonably probable that had he known what the elements of aiding and abetting are, he would not have pleaded guilty to these two counts. Okay, let me ask you this. You have a very vague conclusion. Reverse and remand for further proceedings. What are those further proceedings that you're advocating for? I apologize for the vagueness, but part of it is functioning on multiple assumptions. One assumption would be that there are just inaccuracies and absences of fact that need to be shorn up for a proper plea. Based on this record and the absence of fact, it may be that the government can't prove these convictions and the whole plea would need to be... ...asked questions of your client, so on and so forth, and then if that falls apart, then what? I think as a preliminary step, yes. Coming back to a hearing on counts one and two, can the government establish a sufficient factual basis? If they can, then the judgment could be reentered. If the government can't, then I think that sets the stage for a more substantive request to withdraw the plea, but the district court would be in a better position to address it at this time. This scenario doesn't happen that often, I don't think. One case that I was able to identify in subsequent research, the substantive crime is different, but the Smith case, 997F3215, is relatively recent. There, the factual plea was insufficient, and the remedy imposed was to vacate the guilty plea conviction and sentence and remand for entry of a new plea and necessary proceedings there. All right, that's different from what you're saying. You're just saying, kind of just send it back, start sort of semi-over again, but not withdrawing the plea. Rather, going back to sort of the day of the hearing, whether to accept the plea, you would have to consider the evidence. Yes. Another case that... Well, whether to convict based upon the plea, I guess is the right way to put it. Well, I think there's a real question of whether or not there could be a conviction in the first place on these two counts, which increases the harm to Mr. Martinez, but it does present a threshold question of whether or not this is just a matter of the government did not present sufficient facts to support aiding and abetting, or they just don't exist. And I'm not in a position to analyze beyond the record, and the district court would be the court to be able to make that determination. Another case that might be helpful is a sister circuit case, it's Carr, 271 F. 3rd, 172, and I was doing the subsequent research specifically to figure out this remedy question. And a number of circuit courts, especially for inadequate factual bases for pleas, because Rule 11 addresses the state of the mind of the defendant as well as the court, since the court must independently find sufficient facts, they answer the question of remedy based on whether this was a state of the mind of the defendant issue or a court issue. A court's failure to adequately identify and require or inquire whether or not facts exist. And the remedy was crafted based on that. So in Carr, there was a plea agreement. For one of the counts, there was an insufficient factual basis. But because of the uncertainty, they remanded to first determine whether or not there could be a sufficient factual basis. Well, I mean, the sufficient fact could be the judge could say, did you tell her to take the pictures? And he says, yeah. Correct, Your Honor. We don't have that on the record. So, I mean, I think what we're asking, I believe, is not for too much, but for a logical mode of remedy to either correct the inadequacies or to provide a pathway for greater relief if, in fact, there are no facts that support aiding and abetting these counts. But it does start with going back to a hearing to determine whether or not there could be a sufficient factual basis. Because on this record, there is not. Unless there are other questions, I will reserve my time. Okay. Thank you. Mr. Durbin, you're back. Yes, sir. I can't stay away. Good morning. May it please the Court. Judge Haynes, I'm going to go to your question first. I can see which way the wind is blowing, perhaps. No, I'm not saying we are going to accept it. No, no, I understand. I just was asking if we did. Well, Rule 11, this is a Rule 11 violation, I think, 11B3. And Rule 11 says the court must satisfy itself through inquiry of the defendant or examination of relevant materials in the record that an adequate factual basis exists for the elements of the offense. And that's connected to or that's part of the voluntariness requirement of Rule 11. And so I think if the court finds there's not an adequate factual basis to support the plea, it's a Rule 11 violation and it goes back to the district court because basically there hasn't been an adequate determination. It goes back to have the plea hearing again. I think so. The plea hearing, and I think then there's a question, the question arises, does the government actually have the evidence in addition to what's in the record that's going to satisfy the courts? Well, I would think you would want to start there, that you don't think there's anything to send back. Well, I do, but I wanted to answer that question. Okay, then please tell us that. I wanted to answer that question before I lost it. Well, let me ask you this. Yes, sir. I didn't want to divert from that. Undeniably the photos were taken September the 13th or whatever, but anyway, the request was made on September the 26th. The plea colloquy itself is fairly lengthy, but a lot of what's in the plea colloquy deals with what Hubbard did, you know, the female. Yes. Her conduct, et cetera, et cetera. You know, it goes on and on. I mean, just a lot about what she did, her laptop, kind of on and on and on, and then you only get to the couple areas which deal with the date of the . . . She took the pictures and the date of the request, so I guess my question is, given that so much in the colloquy really doesn't deal with him but with her, what do you point to in the colloquy that would support that the plea colloquy itself, the facts in here demonstrate, particularly since there's a difference in the time from the request to when she actually did it? In other words, I understand part of the government's position is that the plea colloquy itself is in the record and supports that there is sufficient evidence, right? The plea plus information and pre-sentence report and the circumstances are. I mean, the weakness of this case is the way the facts are laid out in the factual basis, which is also in the pre-sentence report, which is also the affidavit for the complaint, is that she took the photos in June and early September, and then he requested in late September that she send him those photos. Sometime before that, he sent her several photos, and then she indicated that they had lived at the same residence for about a year. They were engaged to be married, so they had this relationship. And then he revealed that they used the Onion Router, which is an anonymous router used to get to the dark web, basically. And so they were jointly together surfing through the Onion Router to find child pornography. Now, I think from this record, she is not the motivator here. He is the one who had the interest in the child pornography. And she says, well, at first, as she says in the pre-sentence report in her interview, at first he was telling me it was about the beauty of children and the beauty of making babies. And then she basically came to realize, no, there was something else going on here. He had a sexual interest in this. And so this went on for a time, and I infer from that that he was encouraging her, pushing her, inducing her. She was motivated. I can see, you know, that he's urging her on. I mean, to put it mildly, it's a whole despicable set of facts. They're living together, and this is an infant. Yes. These pictures are being taken of, which is beside the point, but it's off the chain in my book. But anyway, I'm just saying the government is the one that chose to charge him with aiding and abetting as opposed to some other crimes. And so we know what the elements of aiding and abetting are. So the question is, I mean, is it a stretch to have to take this long colloquy from June to whatever to somehow say that, you know, because he's urging it and all that, that we get to the aiding and abetting? That's what I'm trying to say. In other words, cut to the chase and articulate it. You're saying you've got to look at the PSR, you've got to look between four pages of colloquy, a lot of which deals with her, in order to get to it. I'm just saying the government chose aiding and abetting. Just tell us succinctly what are the facts that satisfy the aiding and abetting element. I don't find anything in the record that says that he sent her a text or he asked her, would you take those two photographs of SB? That's not in here. The only way to get to it is the district court must have been satisfied that based on the relationship, based on the communications between them, that that was ongoing and that the communications at September were reflective of the communications that went on earlier when she took the first photographs because of that relationship, because of what the interest was, and because of her expression that once she realized what he was doing all this for, she said, it's either me or that, and we put an end to it, and we're trying to find something to do together that's legal and won't get us in trouble. Those are the inferences. That's the information in the record. Is that plain evidence? If we're doing everything together, that's the inference from the evidence we have? Yes. That's what the inference would be. That would be the aiding and abetting together on Horn? Yes, ma'am. Yes, Your Honor. And that's what the evidence is, and I can't point to any more than that. The only other thing I can point to is if that's too much inference, and there's a case cited in the appellant's brief, McDowell, and I went back and read McDowell, and this court won't pile inference on inference, and I don't know if that's too many inferences for you, but that's what the circumstances are, and is that satisfactory for the district court to have made the determination that it's satisfied that there's a factual basis? Otherwise, this case, I think, turns on whether or not it goes back because he's established that he would not have entered the plea had he known, and it goes to the fourth prong of the plain error, basically. Well, it goes to the third. It goes to the third. I'm sorry. Okay, and so what about that? And here's what about that. He pled to three counts. He pled to count one and two, which were the aiding and abetting of production, which each carried 15 to 30 years. He got maxed on both of those. He got 360 on both, and then he pled to count five, which was, I believe it was a distribution. He was charged in five counts, the two production, and then there was, well, let me double check this. I want to make sure I get this right. He was charged in count five with distribution, count six with distribution, count seven with distribution, and count eight with receipt. He admitted facts in the factual basis and in the pre-sentence report to all of those crimes. He pled guilty to count five. And so the way it stacks up is if he's convicted of five, six, seven, and eight, it's the same sentence. It comes out to 960 months. Each carries 20-year max, and that's the same sentence he got, and that was the maximum for the counts that he pled to. And my submission is that it would have come out the same way whether he's convicted on five through eight or one, two, and five. And I think that given those circumstances and given his admission, clear admission to those facts under these circumstances, I don't think he can show that his substantial rights were harmed. And on that basis, it should be affirmed. And that's what I have. And he's not pointing to evidence of innocence. I'm not saying he has to, but I have seen cases where somebody thought that the thing they were confessing to was a crime, and it turns out it's not, that there was some piece of it that they did not do. You know what I'm saying? I do know what you're saying. And so they actually are now like, oh, my gosh, I'm innocent, and I've pled to something, and la, la, la. I don't see that here. I don't see him saying that here. I don't see that either. And he pled to it, and after he was sentenced, he told his lawyer, and his lawyer announced to the court, he does not intend to appeal because he got benefits from the plea agreement. He got counts dismissed and so forth. And so I can only speculate. He knows in his mind what he was doing, and I don't know the evidence outside of the record that answers the question of what was going on in June, what specifically went on in June. I mean, this is absence of evidence in the record, not necessarily evidence of absence, if that makes sense. If there are no other questions, I'll give you back my time. Thank you. Back to you, Ms. Davidson. I'd like to address the third prong, whether or not his substantial rights were affected. I think this would be a different, harder question, harder prong to meet. If it was clear that there were facts alleged in the indictment that went to aiding and abetting, if the elements of aiding and abetting were included in the plea agreement, if the magistrate, when taking the plea colloquy, had restated the elements of aiding and abetting. But there's none of that on this record. And so what he may have agreed to or not is a much harder question because there is an absence of that information. It would be, I think it's easier to show his substantial rights were affected because there was no recitation of the elements of aiding and abetting. How do you respond to the argument that your opponent just made about, well, it would have been the same 5 to 8 as 1, 2, and 5, so what's the diff? Well, the dismissed counts still carry a substantially lower penalty range. And so it's a different character of offense, and it comes with a much lower statutory penalty range. And those are factors that we often see as at least potentially. Why did he plead guilty to this? Well, you know, I think it speaks to Judge Stewart's comment that this is a case off the chains. There is criminal conduct here. But just because there's criminal conduct doesn't mean the conduct meets each crime alleged. I can't answer that. We're the third set of attorneys representing him, so we're very separate from what happened. I might not have done this, but I did something. I'm sorry? I might not have done this, but I did something. I think so. You're dealing with someone with a profound and serious history of mental illness. I don't know how he was counseled. Maybe he thinks being in prison is his only way of not further harming young kids. I think that that is placing too much guessing on this record, Your Honor. I don't know, because he did say, you know, done this before. Well, even if counts one and two are taken away, he's still left with a significant sentence. I think 240 is left. That's nothing to sneeze at. That's a significant imposition of imprisonment, but that's also not the standard for determining his substantial rights. There is a reasonable probability that had he known what the elements of aiding and abetting were, and there is an absence on this record to reflect those facts, he would not have pleaded guilty to that. Do you feel like the case turns on prong three? I mean, the error is so plain, so, you know, this turning on prong three, whether substantial rights are valid. Well, I think that, yeah, I mean, I think prong one and two are easily met. I think prong three does require some discussion. But, again, we can't go beyond the record. I don't know what his counsel was. I just know that there aren't facts for aiding and abetting alleged in the indictment. There were no elements of aiding and abetting set forth in the plea agreement. There was no recitation of aiding and abetting elements during the plea colloquy. So it is entirely possible he doesn't even know what aiding and abetting was. It was just words included in the indictment, which actually it wasn't required when a crime is alleged to include aiding and abetting. And so I think he just didn't know. Well, let's just, if we're going to focus on prong three, it's one sentence in the blue brief, in the original brief. As a result, you know, he, despite the lack of evidence, he got these convictions. As a result, he was sentenced to a total of seven or 20 months' imprisonment for those erroneous convictions. The error affects his substantial rights. Period, end of story. It doesn't say he wouldn't have pled guilty. And so has that argument been waived or at least forfeited by the failure to properly brief it? No. That issue is also raised in the government's response to which I provide a reply. So I think it's shorn up and an adequate response is included. I think that there are cases out there that reflect insufficient factual bases where there's an incorrect assumption that a court makes before accepting a plea or the absence of one element that needs to get shorn up. Here we have a record that doesn't reflect any fact that goes to aid and abetting. Well, this, I don't know, this joint relationship with this lady that they're going online to porn and so on for quite some time and living together and so on, I realize that doesn't by itself necessarily prove it, but it is a piece of the puzzle, in my view, because that's exactly how these things happen. I mean, the reality is evidence when people are whispering in bed is not huge, okay? So you have to make inferences from this kind of thing. And why isn't that an inference that can be properly made when you combine it with his plea and so on? All we have is the fact that they were in a relationship, and while they had their activities surrounded around viewing pornography, we don't know what planted the seed in Hubbard's brain to take that photo. We don't know if it was his suggestion, if a suggestion is even adequate, or if it was something that she decided to do in her own agency to participate. Those are really important questions. Certainly, I think it's too large of a leap, inferentially, to meet a legal element, and that's because even knowing spectatorship is not enough for aiding and abetting. There has to be some sort of active participation in the production of those images, and a mere relationship, a mere proximity to it, even if that's assumed, is not legally sufficient. Thank you. Well, he was asking her to send him the images again, which suggests that he knew what she was doing and engaged early on in the timeline and so forth, so, you know, I don't know, on plain error. I mean, he admits to being a convicted predator and was engaged in this, and he never refutes her culpability in what she did and so on and so forth and all that. I guess we're left at, oh, there are too many inferences, but this shared relationship along that temporal path where he's present, he knows what's going on, and he's participating, I mean, you know, arguably that supports the aiding and abetting, but we'll just have to see. May I respond quickly? Sure, certainly. Okay. And that is, when he does say, send him again, we don't know when he learned about them. We don't know if it's always the case he knew about them after the fact. We don't know when he first, we don't know where, again, falls into that chronology. Okay. Thank you. All right. Thank you to both of you for the briefing and responsiveness to the court's questions. The case will be submitted, and we'll figure it out. All right. Thank you.